## Case No. 2,003.

### BROWN v. DUCHESNE.

[2 Curt. 97.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1854.

#### PLEADING—DEMURRER.

If there be one good plea on the record, and a demurrer be filed, alleging that "the several pleas" are not sufficient, this will be intended to be taken to all the pleas, and must be overruled.

[At law. Action by John Brown against Duchesne for the violation of a patent right. Plaintiff interposed a demurrer to the pleas, which was overruled.]

R. H. Dana, Jr., in support of demurrer.
I. J. Austin, contra.

[NOTE. For decision overruling a subsequent demurrer, see case following (No. 2,004).]

## Case No. 2,004.

### BROWN v. DUCHESNE.

[2 Curt. 371;[1] 4 Am. Law Reg. 152.]

Circuit Court, D. Massachusetts. May Term, 1855.[2]

#### PATENTS—INFRINGEMENT—EQUIPMENT OF FOREIGN VESSEL.

1. Where a French vessel was rigged in France, with gaffs which had been patented in the United States, held, that as the gaffs were placed on the vessel when she was built, as part of her original equipment, in a foreign country by persons not within the jurisdiction of our patent laws, they were not within their application, but exempted.

[See note at end of case.]

2. The patent laws were not intended to apply to and govern the structure or equipment of a vessel of a foreign friendly nation, resorting to our ports, by our consent, for purposes of lawful commerce.

[See note at end of case.]

[Distinguished in Gardiner v. Howe, Case No. 5,219.]

At law. This was an action on the case for the violation of letters patent, granted by the United States to the plaintiff [John Brown] for an improvement in the gaffs of vessels. The defendant [Duchesne] pleaded, in substance, that he was the master of a French vessel called the Alcyon, built and owned in a French port, and officered and manned by French subjects; that the improvement in question was placed on the vessel when built, and as part of its original equipment; that the vessel had come into the port of Boston, in the course of a lawful trading voyage, having the said improvement attached, as part of her rig and equipment; and that this was the only use made thereof by the defendant. There were other allegations in the plea, but the opinion of the court did not rest on them. To this plea, there was a demurrer, which was joined. [Demurrer overruled.]

[For prior decision overruling a demurrer, see preceding case (No. 2,003).]

R. H. Dana, Jr., in support of demurrer.
Ivers J. Austin, contra.

CURTIS, Circuit Justice. The letters patent conferred on the plaintiff the exclusive right to use the thing patented, within the United States. The terms of the grant are broad enough to include every use, by all persons within the territory of the United States. But this grant, and the exclusive rights conferred by it, are creatures of the municipal law of our country; and however comprehensive may be its terms, they cannot be so construed as to include, either persons or things, not within the jurisdiction of the patent laws. Persons or things may be out of the jurisdiction of a municipal law, either because they are locally, where it is not in the power of our country to extend its operations, or because the nation has chosen not to exert its entire legislative power, but to leave particular persons or things, though within its dominion, free from the operations of its laws. This last exemption, depending solely on the will of the nation, may either be entire, or partial and limited, according to its own choice, which may be manifested through the legislative power, by express exemptions or restrictions in the text of written laws, or it may be derived from the usages and practice of civilized na-

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]
[2] [Affirmed by the supreme court in 19 How. (60 U. S.) 183.]

tions, and the presumed intent of each, to conform thereto, until an opposite purpose is manifested; and in the absence of positive legislation, courts of justice in this country and in England have constantly and rightfully exercised the power of determining, in what cases and to what extent, it is the will of the nation, not to extend to foreigners or their property, the municipal laws, which in similar cases, govern our own citizens. A few instances of this, may usefully be adverted to. In the case of The Exchange, 7 Cranch [11 U. S.] 116, it was decided, that a public armed vessel, of a sovereign at peace with the United States, is not within the jurisdiction of any of our tribunals, while lying in a port of the United States. The 29th section of the collection act of 1799 (1 Stat. 648) authorized the seizure of any vessel, which having arrived within the limits of any district of the United States, from any foreign port or place, should depart or attempt to depart, before making report or entry. A vessel arrived in the river St. Mary's, whose waters belonged in common to the United States and the king of Spain. She was not bound to the United States, but was undoubtedly within the limits of one of its collection districts, and fully within the words of the act. There could be no doubt of the power of the United States to compel an entry, if it had seen fit to exert it. But it was held, that such an assumption of jurisdiction was not intended, and that the seizure was not lawful. The Apollon, 9 Wheat. [22 U. S.] 362. In re Bruce, 2 Cromp. & J. 437, property of a testator, who was an American citizen domiciled in the United States, though administered on by an English executor, and bequeathed to English legatees, was held not to be within the act imposing a duty on the payment of legacies, upon a presumed intent of parliament not to include the property of a foreigner who was not bound to contribute to the support of the British government. See, also, the case of Universities of Oxford & Cambridge v. Richardson, 6 Ves. 689; Thomson v. Advocate-General, 12 Clark & F. 1.

Upon the same footing of a presumed consent of the nation, rests the well-settled exemption of ambassadors and public ministers, from the jurisdiction of the laws of the country to which they are accredited. And, indeed, those numerous cases of contract, and distribution of personalty, the status of persons, and many other relations, which are allowed to be governed by the laws of the domicil or of the place of the contract, though foreign to the nation which permits their operation, are all instances of partial exemption of the persons or property of foreigners from the jurisdiction of our municipal laws, not provided for by any expressed will of the legislative power, but implied by courts of justice, from their general fitness and convenience, and from the presumed acquiescence of our country in principles and usages, which civilized countries generally have practised. Conceding therefore, that this French vessel was within our territory, and subject to all our laws, so far as it was the will of the United States to extend those laws over it, and that the terms of the grant to the plaintiff are broad enough to cover every use of the thing patented, within the jurisdiction of the laws of the United States, the inquiry still remains, whether a law of this character, was intended by congress to apply to and govern a vessel of a foreign friendly nation, entering our ports, by our consent, for purposes of trade. I say by our consent, not only because our convention with France gives to French vessels the right to enter our ports and trade here, but also because, if there were no such convention, our consent would be implied until something was done to manifest our intention not to permit it; and I prefer to place this case, not upon the effect or operation of any treaty, which indeed does not seem to have any particular bearing on the case, but upon broader principles, which include vessels of all friendly nations, resorting hither for lawful commerce.

While on the high seas, a vessel is deemed to be part of the territory of the nation to whose citizens it belongs, and under whose flag it sails. Even there, however, it is subject to be arrested and searched in time of war, by public armed ships of a belligerent power, duly commissioned. And when it enters waters belonging exclusively to another nation, it undoubtedly becomes subject to the municipal laws of that nation, to the extent, and in the particulars which that nation may determine. It is also true, that for the encouragement of commerce, and to avoid those occasions for complaint which tend to disturb the peace of commercial states, civilized nations generally, have forborne to extend some of their municipal laws over private vessels of friendly nations entering their ports for trade. Unless exceptions are made by stipulations in treaties, those municipal laws which protect the public health and peace, and the security of the persons and property of citizens, the morals, the policy, and the revenue of the nation, as well as remedies upon contracts, and in some cases for torts, are ordinarily extended over foreign vessels and the persons on board of them. Beyond these, it is understood, that by the general consent of civilized states, the vessels of one nation, though within the ports of another, carry with them the laws of their country, which still govern the rights, duties, and obligations of those on board; and that to the extent of this latter jurisdiction, and for the purpose of enabling it to exist, the vessel is deemed to be a part of the territory of the nation to which it belongs. Both the executive and legislative departments of our government have recognized this principle. The former, in its dip-

lomatic intercourse with other states, and the latter, by positive enactment. See Mr. Webster's Letter to Lord Ashburton, 6 Webster's Works, 301; 4 Stat. 115, § 5. See, also, Vatt. Law Nat. lib. 1, c. 19, § 216.

The right of every nation, by its laws, to regulate the structure and equipment of its vessels of commerce, must be allowed to be complete and entire. At the same time, every other nation has a right to exclude from its ports, all vessels having, or not having a particular structure or equipment, and to admit them, only on conditions which its own welfare prescribes. This power of exclusion, either absolute or conditional, is as clear of doubt as the former right; but, considering the nature of the subject, and the manner in which it has been treated in the intercourse of nations, it is apparent, that any exercise of this power, by one nation, over the structure or equipment of the vessels of another, is a thing of grave importance. In the first place, it is the interest of each nation that the powers belonging to every sovereign state, as such, should not be diminished or restrained, for they are instruments for the benefit of the people who constitute the state; and nothing should be done by one nation, tending to embarrass their free exercise by another, unless it is clearly required by a just regard to its own welfare. Looking to this particular subject of the admission of the vessels of one nation into the ports of those of another, for the purposes of trade, we find that it has been the subject of treaties and conventions, and that the conditions upon which admission is allowed, and sometimes the particulars in which municipal laws shall operate, have been regulated by precise stipulations. It cannot be doubted, that in the apprehension, especially of all commercial states, the particulars in which the vessels of one country shall be controlled or affected by the municipal laws of another country, while lying in its ports, is a distinct subject of legislation, quite aside from its internal affairs, and to be influenced by considerations very different from those which would determine the grant of a monopoly affecting the domestic trade of the country. To say, that when congress legislated respecting patents, it had in view this matter, and intended to enable private citizens to interfere with the structure or equipment of foreign vessels, seems to me not admissible. Such an intention may be manifested by express enactment, extending in terms to some or all foreign vessels; it may even be deduced from a law, broad enough in its general terms, to embrace such vessels, and which, from its subject-matter, and the mischiefs to be remedied, may fairly be considered to have been designed to include such an exercise of power. But in making the laws concerning patents, congress was legislating alio intuitu. There is no sufficient reason to suppose that they designed to touch the subject of the structure or equipment of foreign vessels. It is, to say the least, extremely questionable, whether it would consist with that comity which is due to foreign nations, if we were to enable private persons to exact damages or compensation, for the use of something, which the owner of the foreign vessel used in its structure, in conformity with the laws of his own country, where the vessel was built. It would seem to be very difficult also, to adjust the rate or amount of compen ation or damages, for a use which is undoubtedly lawful, even under our municipal law, before the vessel enters our waters, and as soon as it leaves them. Certainly the use in our waters, by a vessel belonging to a foreign country, is almost an unappreciable part of the use of a thing patented.

But I do not rest on these considerations. My opinion is, that the patent laws of the United States are not extended over foreign vessels visiting our ports, so as to affect the structure or equipment which they bring hither. Judgment must be rendered for the defendant on the demurrer.

[NOTE. Plaintiff brought error, but the foregoing decision was affirmed by the supreme court on the ground that an improvement in the construction and equipment of a foreign vessel, for which a patent has been obtained in the United States, can be used by such vessel within the jurisdiction of the United States while she is temporarily there for the purpose of commerce. Brown v. Duchesne, 19 How. (60 U. S.) 183.]